```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------X
Michael Torres,                                    JURY TRIAL DEMANDED

                Plaintiff,                         Docket No.
                                                   15-cv-7097
    -against-

                                                   COMPLAINT
Nicholas LaLota, individually and
in his official capacity as a
Commissioner of the Suffolk County
Board of Elections, and the
Suffolk County Board of Elections,

                Defendants.

-------------------------------------X
```

Plaintiff Michael Torres ("Torres") by his attorneys McLaughlin & Stern, LLP, as and for his complaint against the defendants, alleges the following:

**PRELIMINARY STATEMENT**

1. This is a civil rights action to, among other things, vindicate Torres' federal civil rights under the First and Fourteenth Amendments to the Constitution of the United States.

2. In order to maintain his job, Torres was required to pledge his political allegiance, endorse and support a judicial candidate that he did not believe in.  Torres was specifically told by his employer, a public agency, that if he refused to do

1

so, he would lose his job.  Such a choice is tantamount to coerced belief, a practice that is not condoned or permitted by the Constitution.  Torres was placed in the constitutionally impermissible position of choosing between his political values and employment.  He chose his political values and was terminated for that decision.

    3. Torres refused to change his political opinions and, thus, refused to lend his speech, association, time or money to the judicial candidate that he did not support.  In retaliation, Torres was terminated from his job at the Suffolk County Board of Elections.  Torres was penalized for his personal beliefs and associations, matters that are unquestionably and fundamentally protected by the Constitution.

## JURISDICTION AND VENUE

    4. This Court has jurisdiction over the action pursuant to 28 U.S.C. §§1331 and 1343 and 42 U.S.C. §1983, as this is a civil rights action arising under the United States Constitution and the laws of the United States.  This Court has jurisdiction over the supplemental claim arising under New York State's Labor Law pursuant to 28 U.S.C. 1367(a).

    5. Venue properly lies in this judicial district pursuant

to 28 U.S.C. 1391(b), because the plaintiff and defendants reside and maintain their principle place of business in Suffolk County, New York.

**PARTIES**

6. Torres is a resident of the State of New York, County of Suffolk.

7. Nicholas LaLota ("LaLota") is a resident of the State of New York, County of Suffolk, and is a Commissioner at the Suffolk County Board of Elections ("Board of Elections"). He is sued in his individual and official capacity.

8. The Board of Elections is a Suffolk County agency created under the Election Law of the State of New York. It is responsible for overseeing all aspects of the electoral process in Suffolk County including, *inter alia,* voter registration, administering fair and accurate elections, regulating election disclosures and campaign practices, and preserving the voters' confidence in the democratic process.

9. Under the terms of the Election Law, the Board of Elections is directed and run by two commissioners appointed by the Suffolk County Legislature, one of whom is LaLota, who was designated as the Republican Commissioner.

3

**STATEMENT OF FACTS**

*Torres' Employment*

10. After completing approximately one year at SUNY Farmingdale, Torres went to work in the automotive parts industry selling car parts from 1991 to 2002.

11. Torres, thereafter, was employed as an automotive parts clerk for the Town of Islip from 2003 to 2007.

12. In 2007, Torres was hired by the Board of Elections as a full-time administrative employee whose duties included data entry and processing. He was not a policy maker and had no discretionary authority in his job duties other than to insure that the voting process was working and the votes properly accounted for and preserved.

13. While employed at the Board of Elections, Torres' duties and responsibilities included distributing voter registrations material, uploading election result, monitoring the scanning function on election machines, ensuring that the correct number of election machines were delivered to the correct locations, making deliveries, data entry, and aiding in the management of the processing department.

14. While Torres was assigned the title of Senior Assistant Commissioner, the position had no official description and at

4

all times his job function and responsibility was ministerial in nature.

15. During his tenure at the Board of Elections, Torres (as well as several others) reported directly to Republican Deputy Commissioner William Ellis ("Ellis").  At all relevant times, Ellis reported directly to LaLota, the Republican Commissioner at the Board of Elections.

16.  Political party membership or affiliation was not essential to Torres' duties at the Board of Elections.

17.  The role of the Board of Elections and Torres' job thereat is not to ensure that any particular candidate wins, it is to ensure a fair electoral and democratic process.

*Torres' Belief and Activity in the Conservative Party*

18. Torres, in 1996, registered as a member of the Suffolk County Conservative Party ("Conservative Party").  He began attending meetings and events sponsored by the Conservative Party and campaigned and fundraised for its candidates. Ultimately, in 2010, Torres became a Town Leader and in 2012 became the Secretary to the Conservative Party.  Torres both identifies with and believes in many of the ideals and tenets of the Conservative Party.  All of Torres' political activity and

participation in the Conservative Party was personal to him and not part of his work responsibilities.

   19. Prior to, during, and after his tenure at the Board of Elections, Torres was and remains active in the Conservative Party by, among other things, campaigning and fundraising for the benefit of candidates running for public office.

*The Brookhaven District Court Election*

   20. In the summer of 2015, Tara Scully ("Candidate Scully") was the Republican candidate for the Brookhaven District Court, 6th District ("District Court"). Her opponent was Howard Heckman, Jr. ("Candidate Heckman"), the Democratic candidate.

   21. In or around late June 2015, Jessie Garcia ("Garcia") approached Torres. Garcia worked at the Board of Elections as the Hispanic Outreach Coordinator, reported directly to LaLota, and was the Chairman of the Brookhaven Republican Party. Garcia, at the direction of LaLota, asked Torres to use his influence and participation within the Conservative Party to have the Conservative Party endorse the Republican candidate, Candidate Scully, and not Candidate Heckman.

   22. LaLota was personally interested in having Candidate Scully win the election. In order to help the Republican

6

candidate prevail in the general election, he wanted to have Candidate Scully receive the Conservative line since the Conservative Party generally gives Republican candidates in Suffolk County an additional 7%-12% of votes.

23. Torres informed Garcia that he personally knew Candidate Heckman (Torres at the time was engaged to Heckman's daughter) and it was his personal belief that Candidate Heckman would make the better candidate.  Torres stated that, in his opinion, Candidate Heckman was better qualified for the position having been admitted to the bar since 1977, practiced law for more than 30 years and employed as a confidential law secretary to a Suffolk County Supreme Court Justice, while Candidate Scully had only graduated law school in 2004 and, in his opinion, did not have the necessary experience or qualifications to be a judge.

24. Torres made clear to Garcia that he would not change his personal political beliefs as demanded by LaLota and that he would continue to support Candidate Heckman over Candidate Scully.  Garcia told Torres that they would discuss the matter further after the July 4th holiday.

25. On July 7, 2015, LaLota called Torres into his office. LaLota told Torres that Torres would be terminated from his job

at the Board of Elections if he did not support having the Conservative Party nominate Candidate Scully and not Candidate Heckman at the Conservative Party's judicial convention in late September.

26. Torres again refused and told LaLota that would not use his speech, association or position within the Conservative Party to campaign for or support Candidate Scully.

27. In or around late July 2015, a vacancy arose in the Suffolk County Supreme Court.  As a result, Candidate Heckman became a candidate for that position and withdrew his candidacy for the District Court position.

28. In August 2015, Garcia again came to see Torres at the direction of LaLota.  He told Torres that Torres should now be able to support Candidate Scully for District Court inasmuch as Candidate Heckman was no longer running for District Court judge and that he should use his influence to get the Conservative Party to nominate her for the position.

29. Torres, again, informed Garcia to tell LaLota that Torres would not change his political beliefs as LaLota demanded to support Candidate Scully or otherwise use his political speech, association or influence within the Conservative Party to do so.  Torres said that, in his opinion, the Democratic

8

candidate for District Court, Stephen L. Ukeiley ("Candidate Ukeiley"), was more qualified and experienced for the position than Candidate Scully, and should receive the Conservative Party nomination.

30. Torres was thereafter informed by other employees at the Board of Elections including his direct supervisor, Ellis, that unless Torres supported Candidate Scully so she would receive the Conservative Party's endorsement, LaLota would terminate him.

31. On Monday, September 28, 2015, the Conservative Party held its judicial convention at the American Legion Hall in Islip, New York, at which Torres was present.  Torres did not support Candidate Scully and the Conservative Party nominated and endorsed Candidate Ukeiley as its candidate for District Court.

32. Four days later, on Friday, October 2, 2015, LaLota met with Torres at the Board of Elections and terminated him. LaLota gave Torres thirty minutes to collect his personal belongings from the office and told him that he would be escorted out of the building.

33. Since 2007 until his termination, Torres has performed his job in a satisfactory manner.  At no time during his tenure

9

at the Board of Elections was Torres disciplined, demoted or received a poor performance evaluation. At the time of his termination, Torres' salary was in excess of $100,000 per year plus benefits.

**FIRST CAUSE OF ACTION**
**(Violation of the First and Fourteenth Amendments**
**to the Constitution of the United States)**

34. Torres repeats and realleges each and every allegation above as if set forth in full herein.

35. Torres is a citizen of the United States and has a First Amendment right, incorporated to the States through the Fourteenth Amendment, to associate with any political party.

36. LaLota, acting under color of state law, retaliated against Torres by terminating him for exercising his First Amendment rights including the freedom of political speech, belief, activity and association.

37. LaLota terminated Torres because Torres refused to support, campaign for, or otherwise use his position within the Conservative Party to endorse Candidate Scully.

38. Punitive damages are warranted against LaLota to deter this type of conduct in the future.

39. Torres suffered economic damages as a result of LaLota's conduct.

40. Torres is entitled to an award of compensatory damages in an amount of no less than $1,000,000, punitive damages, equitable injunctive relief including reinstatement, back pay, front pay, costs, disbursements and attorneys' and expert fees against LaLota, for the violation of his civil rights pursuant to 42 U.S.C. §1983, *et seq.*

41. Torres is also entitled to an award of prospective injunctive relief against the Board of Elections including reinstatement and ancillary relief associated therewith such as back pay, front pay, costs, disbursements and attorneys' and expert fees for the violation of his civil rights pursuant to 42 U.S.C. §1983, *et seq.*

### SECOND CAUSE OF ACTION
### (Violation of New York Labor Law §201-d)

42. Torres repeats and realleges each and every allegation above as if set forth in full herein.

43. LaLota unlawfully terminated Torres' employment because of Torres' refusal to support or campaign for Candidate Scully.

44. LaLota unlawfully terminated Torres' employment because of Torres' support and campaign for Candidates Heckman and Ukeiley.

11

45. Torres' political activities within the Conservative Party and support and campaign for Candidates Heckman and Ukeiley were conducted outside of work hours, off of work premises, and without use of work equipment or property.

46. Torres suffered economic damages as a result of his unlawful termination.

47. Pursuant to N.Y. Labor Law §201-d(7)(b), Torres is entitled to an award of compensatory damages in the sum of no less than $1,000,000 and equitable injunctive relief against the defendants including reinstatement, back pay, front pay, costs, and disbursements.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the following relief:

1. On the First Cause of Action, an award of compensatory damages, punitive damages, and equitable injunctive relief, costs, disbursements, attorneys' and expert fees against LaLota; equitable injunctive relief including reinstatement, back pay, front pay, costs, disbursements, attorneys' and expert fees against the Board of Elections;

2. On the Second Cause of Action, an award of compensatory damages, and equitable injunctive relief, costs and disbursements against LaLota; equitable injunctive relief

including reinstatement, back pay, front pay, costs and disbursements against the Board of Elections; and

    3. On all causes of action, that this Court order any further relief that it deems just and appropriate.

### JURY DEMAND

    Plaintiff, pursuant to Federal Rule of Civil Procedure 38, demands a trial by jury.

Dated:    New York, New York
            December 14, 2015

                          McLAUGHLIN & STERN, LLP

                          By: *Alan E. Sash*
                          Steven J. Hyman
                          Alan E. Sash
                          260 Madison Avenue
                          New York, NY 10016
                          (212) 448-1100

                          *Attorneys for Plaintiff*